UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWNNA PITTS,

    Plaintiff,

v.

STANLEY ACCESS
TECHNOLOGIES, LLC,

    Defendant.

Case No. 13-cv-13725
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22]**

    Plaintiff Shawnna Pitts was exiting a CVS store in Ferndale, Michigan, when one of the automatic doors closed on her, causing her injury. She reached a settlement with CVS and then planned to sue Defendant Stanley Access Technologies, LLC ("Stanley"), the manufacturer of the automatic doors. In the meantime, she filed for Chapter 7 bankruptcy and did not disclose either the settlement with CVS or her potential claim against Stanley. She was granted a discharge from bankruptcy and filed this lawsuit shortly thereafter. Now before the Court is Stanley's Motion for Summary Judgment. (Dkt. 22.) The Court finds that because Pitts omitted her potential claim against Stanley from her bankruptcy schedules, and failed to amend the schedules after indicating in her settlement with CVS her intent to pursue a claim against Stanley, judicial estoppel bars her claim. Therefore, Stanley's Motion for Summary Judgment will be granted.

## I. FACTUAL BACKGROUND

    Only Stanley Access Technologies, LLC ("Stanley") provided a statement of facts. Accordingly, the Court assumes that the facts provided by Stanley are not disputed for the

purpose of summary judgment but will view them in the light most favorable to Pitts, the nonmoving party.

Stanley is a manufacturer and installer of automatic doors that are commonly used at retail stores. (Dkt. 22-2, Aff. of Davit Sitter at ¶ 4.) Stanley installed the automatic doors at the CVS location at 900 Nine Mile Road in Ferndale, Michigan at some point before August 25, 1999. (*Id.* at ¶ 5.) Stanley first serviced the CVS doors on August 25, 1999. (*Id.* at ¶ 6; Dkt. 22-3, Maintenance Records at 1.) There are two sets of doors at this location; one set leads to an entry vestibule and the other leads into the store. (Dkt. 22-4, Pitts Dep. Ex. 4, Picture of Doors.) Two doors are marked "Entry" and two are marked "Exit." (*Id.*) Pitts alleges that she was injured when one of the Exit doors closed on her as she was leaving the CVS on July 27, 2010. (Pitts Dep. at 5, 14.)

Pitts first filed suit against CVS in state court. (*See* Compl. (indicating that there was "a prior case involving Plaintiff and CVS Caremark in [Oakland County Circuit] Court . . . .").) On April 22, 2013, Pitts and CVS entered into a settlement agreement. (Dkt. 22-5, Settlement Agreement.) The agreement provided that its intent was "not to release or discharge any claim against Stanley Doors [*sic*], the Manufacturer of the automatic doors involved in the aforesaid injuries to Shawnna Pitts," and also indicated that "Shawnna Pitts intends to bring a claim against Stanley Doors [*sic*] for product liability and negligence and it is expressly understood that this Release does not prohibit or deter such litigation." (*Id.* at 1.)

The week before Pitts and CVS entered the Settlement Agreement, on April 15, 2013, Pitts filed a Voluntary Petition for Chapter 7 Bankruptcy. (Dkt. 22-6, Pet. at 2.) Schedule B to the Petition required Pitts to disclose any "[o]ther contingent and unliquidated claims of every nature . . . ." (*Id.* at 8.) However, Pitts made no mention of her lawsuit against CVS or her

potential claims against Stanley and represented that the Petition was "true and correct to the best of my knowledge, information, and belief." (*Id.* at 30.) Nor did Pitts mention the potential claim against Stanley or her settlement with CVS in her Amended Petition, filed June 12, 2013.[1] (Dkt. 22-7, Amended Schedules.) Pitts obtained an order discharging her from bankruptcy on July 23, 2013. (Dkt. 17, Discharge Order.)

Three days later, Pitts filed a complaint against Stanley in Oakland County Circuit Court. (Dkt. 1.) She asserted claims of Negligence (Count I), Implied Warranty (Count II), and Express Warranty (Count III). (*See id.*) Stanley removed the case to this Court on August 30, 2013. (*Id.*) On February 17, 2014, the Court entered a stipulated order of "dismissal with prejudice of any and all claims that relate in any way to the maintenance and/or service of the automatic doors at issue in this matter." (Dkt. 12.) Accordingly, the Court considers Pitts' three-count Complaint to be addressed to Stanley's alleged duties to "design, test, manufacture, sell, [and] install" the doors. (See Compl. ¶ 6.) Now before the Court is Stanley's Motion for Summary Judgment as to these remaining claims, filed on July 28, 2014. (Dkt. 22.) The motion is fully briefed (Dkts. 25, 28) and does not require oral argument, *see* E.D. Mich. LR 7.1(f)(2).

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for

---

[1] In her response brief, Pitts represents that "she is taking steps to conform her bankruptcy pleadings to the existence of this case." (Dkt. 25, Pl.'s Resp. Br. at 11.) But Stanley's Reply Brief indicates that as of September 8, 2014, there had not been any updates to the docket in Pitts' bankruptcy case. (Def.'s Reply Br. at 3 n.2 (citing *In re: Shawnna Denise Pitts*, No. 13-cv-47609 (E.D. Mich. Bankr. Apr. 15, 2013).) Nor has Pitts submitted any supplemental documentation or briefing regarding her bankruptcy proceedings. (*See generally* Dkt.)

summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

**III. ANALYSIS**

Stanley argues that Pitts' claims fail as a matter of law for three reasons. First, that the six year time limit under Michigan's Statute of Repose has expired and therefore Pitts' claims are barred; second, that Pitts cannot support her claim for express warranty because she has neither an expression of warranty nor privity of contract; and third, that Pitts should be judicially estopped from asserting her claims because she did not disclose them in her bankruptcy petition. The Court agrees that Pitts should be judicially estopped from asserting her claims and therefore does not reach the statute-of-repose or breach-of-warranty issues.

When Pitts filed her bankruptcy petition, she was under a duty to file a "schedule of assets and liabilities." 11 U.S.C. § 521(1). "It is well-settled that a cause of action is an asset that must be scheduled under § 521(1)." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 423 (6th Cir. 2005) (citing *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001)). "Moreover, the duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Id.* The undisputed facts are that Pitts never disclosed her potential claims against Stanley or her settlement with CVS prior to receiving her bankruptcy discharge.

"The judicial estoppel doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988). The doctrine protects "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. Ohio 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

While "the circumstances under which judicial estoppel may be appropriately invoked are probably not reducible to any general formulation of principle . . . . several factors typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citations omitted). The Sixth Circuit has focused on two in particular: "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning*, 283 F.3d at 775 (citation omitted).

However, judicial estoppel will not apply where "the prior inconsistent position occurred because of mistake or inadvertence." *Browning*, 283 F.3d at 776; *see also New Hampshire*, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake."). To determine whether a bankruptcy debtor's failure to disclose a claim is inadvertent, courts consider whether "(1) the debtor lack[ed] knowledge of the factual basis of the undisclosed claims, or (2) the debtor [had] no motive for concealment." *Lewis v. Weyerhauser Co.*, 141 F. App'x 420, 425–26 (6th Cir. 2005).

The Sixth Circuit provided a summary of this analysis in *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010), an opinion affirming the district court's application of judicial estoppel to a sexual harassment claim that the plaintiff had failed to disclose in her bankruptcy schedules:

> In short, to support a finding of judicial estoppel, we must find that: (1) White assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) White's omission did not result from mistake or inadvertence. In determining whether White's conduct resulted from mistake or inadvertence, this court considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, we will look, in particular, at White's 'attempts' to advise the bankruptcy court of her omitted claim.

*Id.* Moreover, because this is Stanley's motion for summary judgment, if Stanley "come[s] forward with evidence of bad faith," Pitts must "point out evidence that shows an absence of bad faith (in particular through her attempts to correct her initial omission) and that her omission resulted from inadvertence or mistake and was not intentional." *Id.* at 477 n.4.

In this case, the undisputed facts reflect that Pitts' position during her bankruptcy proceedings was that she had no claims against either CVS or Stanley. In her petition, filed after the door incident and after she had filed her lawsuit against CVS, she "declare[d] under penalty of perjury that the information provided in this petition is true and correct." (Pet. at 3.) But in the Schedule section for "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Pitts indicated "None." (Pet. at 8.) And when she amended her schedules on June 12, 2013, after she had settled with CVS and expressly reserved her right to sue Stanley, the only change was "to include [a] 401K that was omitted from original filing . . . ." (Am. Pet. at 1.)

When the bankruptcy court granted her an order of discharge, it adopted the position that Pitts took in her bankruptcy filings – that she had no claim against Stanley. *See Reynolds*, 861 F.2d at 473 ("When a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position."); *see also White*, 617 F.3d at 478 ("White omitted from her initial filings [before the bankruptcy court] . . . any mention of her harassment claim . . . . This omission, which essentially stated that the harassment claim did not exist, was contrary to White's later assertion of the harassment claim before the district court."); *Lewis*, 141 F. App'x at 425 ("[I]t is also clear that in confirming Lewis's Chapter 13 plan, the bankruptcy court adopted Lewis's statement that she had no potential causes of action.").

The undisputed facts further reflect that Pitts' omission did not result from a mistake or inadvertence. First, it is clear that Pitts had notice of the claims against Stanley on or around the time she filed the Petition and her Amendments because the Settlement Agreement, finalized

7

only a week after Pitts' initial Petition, unequivocally states her intent to file suit against Stanley. And, of course, she ultimately did file suit against Stanley – on July 26, 2013, three days after the bankruptcy court issued the discharge order. Second, the Sixth Circuit has noted that, in the Chapter 13 bankruptcy context, "[i]t is always in a . . . petitioner's interest to minimize income and assets," *Lewis*, 141 F. App'x at 426, and this logic certainly applies to Pitts, who estimated that she had between fifty and ninety nine creditors and over $100,000 in liabilities in her filings. (Pet. at 1.) In other words, Plaintiff had a motive to conceal her claims against Stanley from the bankruptcy court and her creditors as she stood to personally gain from any recovery she received from the lawsuit. *See White*, 617 F.3d at 479 ("if the [] claim became a part of [the] bankruptcy estate, then the proceeds from it could go towards paying [the debtor's] creditors, rather than simply to paying [the debtor].").Third, there is no indication that Pitts ever attempted to inform the bankruptcy court of her claims against Stanley even though the Settlement Agreement indicated that she had the intent to file suit. Even when she amended her Petition on June 12, 2013—more than two months after her settlement with CVS—she only did so to include an omitted 401K and made no mention of her settlement agreement or her intent to sue Stanley.

While Pitts claims in her response to the present motion that "she advised her bankruptcy attorney that she is taking steps to conform her bankruptcy pleadings to the existence of this case," (Dkt. 25, Pl.'s Resp. Br. at 11), she has provided no evidence of those efforts (and Stanley has provided evidence that none have been made by reference to the bankruptcy docket) and she has already been discharged from bankruptcy based on the petition as it stood in June. *See Anderson*, 477 U.S. at 249 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."); *see also White*, 617 F.3d at 478 ("[E]fforts to correct an

omission that came before the Defendants filed their motion to dismiss are more important than efforts that came after the Defendants filed their motion to dismiss.").

Pitts' response is that it is inconsistent for Stanley to argue judicial estoppel where Stanley has also asserted that Pitts' claims "never had any value" due to the Statute of Repose. (Pl.'s Resp. Br. at 10.) This argument is unconvincing. Movants may present alternative grounds for summary judgment in one motion. Additionally, Pitts disagrees with Stanley and continues to argue that her claims have merit and value, yet offers no explanation for why they were never disclosed in the bankruptcy proceedings.

## IV. CONCLUSION

In short, Stanley has pointed to evidence that Pitts received a bankruptcy discharge based on a Petition that omitted claims she knew she had, and stated that she intended to pursue, against Stanley. Because Pitts has not responded with evidence that her omission was inadvertent or not in bad faith, Pitts is judicially estopped from pursuing her claims against Stanley in this Court. Accordingly, summary judgment in favor of Stanley is warranted on all of Pitts' claims and Stanley's motion is GRANTED.

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE

Dated:  December 23, 2014

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 23, 2014.

s/Jane Johnson  
Case Manager to  
Honorable Laurie J. Michelson